Good morning. I call the case of number 5-17-0060, PHH Mortgage Corp. v. Ashtiani and others. Are counsel ready? I'd forgotten what I was going to say. We weren't really talking about the Eclipse. Other than that, I'm Janet Rhine. I represent PHH Mortgage Corporation. And this is an interlocutory appeal for the denial of a similar judgment. And if the jurisdiction is based on refusal to place the mortgage in your condition and the jurisdiction issue, it's important that we discuss that first. The defendant has stated in a gathering brief that the plaintiff was new, that the counterclaims did not affect the foreclosure proceedings. So that was a surprise to me. And the entire allegation that there was a jurisdiction issue was a surprise to me. Because I'm sure the judge is just as wondering. In the record in the entire proceeding, which began in 2005 and encompassed several plaintiff's attorneys and numerous motions for summary judgment and attempts to try to gain foreclosure of this property, it became apparent after all these years that they weren't really claiming money damages and they were really seeking possession. But then Mr. Sanders came on board in October of 2016, and we discussed it in court at his motion to continue. And he stated, well, why don't we just deal with these foreclosure issues and then go on to trial on the damages issue. And maybe I should have said okay, but I didn't. And I said, well, he hadn't read the record yet. And I said, well, Mr. Chumlin had taken the view that these counterclaims really were to prevent foreclosure, and is that what you want to do? And I got the impression that he did. I don't remember what he said. So I followed it up with an e-mail, and I asked if he would like to move on with the foreclosure issues and then separately address damages on the counterclaims, and I didn't receive a response. So I thought we were dealing with possession on all the claims. And so the question I had when I received the denial of the motion for summary judgment was, okay, what purpose would a trial serve? Because at the hearing, there were no disputed facts that were discussed at the hearing. And so now in the obliquery, the defendants have raised some material facts that they say need to be addressed. And so if that's going to be what I'm going to talk about here in this little argument, but if it is determined that there are no genuine issues of material facts that prevent summary judgment, and if there's no purpose for a trial because there is nothing to try, then maybe the Court has jurisdiction over these counterclaims to the extent that they request money damages. But nevertheless, even as to the counterclaims, I'm requesting that the Court address the issue of possession because the defendants have addressed the merits of these issues, and it's my understanding that they have been and are using these counterclaims to prevent possession. So at the very least, I'm asking that the Court address these counterclaims to say that they don't prevent possession. So I'm going to address the counterclaims first and address the material fact issues that the defendant has alleged. Just briefly, the rest of the claim, under the Real Estate Settlement Procedures Act, they are saying that there was a transfer that took place that was not notified by the plaintiff. And over the course of these many years that this loan was in place, from 1995 until the bankruptcy, 1999 until the bankruptcy took place in 2005, PHH Mortgage Corporation underwent some name changes. And the defendant has said that the affidavit, in support of the idea that there wasn't a transfer that triggered the notice provision, stated that PHH was incorporated in 1985, and that the articles of incorporation changed in 2005 to change the name to Senate Mortgage Corporation. And a corporate name change is not considered a transfer that triggers any notice requirements in RESPA. And the defendants have said that the affidavit is not sufficient and there's nothing in the record that supports this allegation. Actually, in my three iterations of this motion for summary judgment since 2010, I previously had supplied a more thorough affidavit that included certified copies of all name change documents since 1985. But there's a four-year statute of limitations on a RESPA claim. The counterclaims were filed in 2007, so really the relevant time was from 2004 to 2007. And all of that stuff, all the documentation, really became kind of unnecessary as the litigation went on, it seemed to me. But this is in the record, it's 428, and the affidavit is sufficient within the statutory time frame. Then the notice provision, notice of the assignment of the transfer of servicing rights was provided at closing, which happened on July 13th of 1999, and that's found at page 83. But then again, after the note was transferred on August 4th of 1999, there's notice again. And so there's really no genuine issue of material fact as to a violation of RESPA. I don't understand what purpose the trial was served, but nevertheless, if the court determines they don't have jurisdiction over this counterclaim, I would request that the determination be made that this does not prevent possession. Then as to Counterclaim 2, just briefly, the Fair Debt Collection Practices Act counterclaim does not apply as a matter of law because the note was discharged. There's no debt that was ever being collected in this case. It was discharged in bankruptcy before the action was filed. And the Illinois Rules of Civil Procedure and the Mortgage Foreclosure Law are met beneath the terms of the Act as a matter of law. And the claim that the defendant is making is that the lawyer that filed the foreclosure claim is a debt collector and that that's apparently a material issue, a fact. But as a matter of law, it just doesn't hold water. There's no reason for a trial on that. But again, it does not prevent possession. As to the affirmative defenses, these are specifically about possession and therefore absolutely has jurisdiction over the affirmative defenses. And the defendant claims that Mrs. Asciani owns an interest in this property that prevents foreclosure. And Mr. Asciani is the sole owner of the property. He was the only signatory on the note. And Mrs. Asciani, in accordance with typical banking practice, waived her homestead right and the mortgage. So there's no known interest under Illinois law that Mrs. Asciani could be claiming that she owns. And they have never alleged an interest, even in their affilibri. They say the extent of her interest is not known. And this is a legal issue. And some court really should come forth and say, okay, yeah, there's no interest under Illinois law that Mrs. Asciani owns that will prevent foreclosure. And so I'm asking this court to make that ruling. He now, on appeal, he's alleged a couple of issues of material fact that he thinks would validate a trial. And one of those is equity in the home. And that came out of my discussion of the inchoate interests that non-owning spouse owns under Illinois law prior to the death or the divorce of the property-owning spouse. And if there's no equity in the home, there's not even an inchoate interest. In this case, the verified bankruptcy documentation in 2005 states that the value of the home was, in 2005, $68,000. The affidavit, when this motion was filed in 2012, including the taxes and interest that have been paid by the bank every month during all these years that this has been in foreclosure, both attorney's fees and interest and the principal due on the debt, as of 2012, amounted to $134,000. So any suggestion that there's equity in the home would require the value of the property to have doubled in this amount of time. And that's really unlikely, and especially since additional attorney's fees have been incurred since 2012. So, but even if there is equity, it's a circular argument, because Donna Ashtiani does not own any interest in the property that's recognized under Illinois law. This is not a community property state. And if you really go down that path, that's where it goes, but we're in Illinois, so we really don't have to brief community property here. And he goes into an issue of mortgage validity on the field to raise an issue of material fact that he says prevents foreclosure. And this was brought out at the 11th hour in our hearing just briefly, and I didn't have any idea of what he was talking about. I've never heard of this before. But he alleged that the note was transferred on the date of closing, on July 13th of 2099, and that the mortgage was not transferred until August 4th of 2099. And the document, if you look in the appendix, the actual transfer, the document that was signed on July 13th of 1999, was not a transfer of the note. It was a notice that the mortgage rights, that the rec received payments, was being notified. A notice of assignment of transfer of servicing rights. It wasn't the note being transferred, and the note was transferred apparently on August 4th. So there was no separation, but even if there were, even if these dates were separate under Illinois law, as long as PHH owns the note at the time that they bring the foreclosure action or even at the time of trial,  And there's another case that says that if the bank holds the note prior to getting the security interest, then the security interest is still valid. So, and this is what he's alleging, that the bank held the note first and then gained the mortgage later. And, I mean, that's just kind of the basic principle that the mortgage is not invalidated by such an event. But besides that, the issue is really raised to Dakota, because Oliver Asciani filed bankruptcy in 2005 and was discharged. And under bankruptcy law, this is a court proceeding, and any issue of validity of the lien would have had to have been brought during the bankruptcy proceeding as an adversary proceeding, and it was not. And that's in my briefing. It's discussed in my briefing. But that means that it's not appropriate to raise any issues of mortgage validity here. But, again, there are, as I just said, there are no issues of mortgage validity that are invalid. The second affirmative defense is under the consumer fraud act. And the defendants are not alleging money damages here. They're alleging that a vexatious refusal to accept payment prevents foreclosure. And this has been their position all these years, that there was a vexatious refusal to accept payment. But injunctive relief is not available under this statute unless the attorney general brings it. So why this affirmative defense has been able to sit there for all these attorneys and all these violences is really a mystery. But it has, and it needs to be addressed. The additional, in support of their idea that there are issues of material fact, they stated that there might be additional payments. So in our summary judgment evidence, we rebut this allegation with the entire payment history on the loan. All the payments that were received and all of the payments were timely made from 1999 until April of 2005, and they were all documented in the loan summary judgment evidence. And then there was a late payment. There was no payment between April and June 9th of 2005. Meanwhile, in May of 2005, Oliver Ashtiani, the sole owner of the property, filed bankruptcy. And then they made the payment and the bank applied the payment to the April balance in July. But meanwhile, they had to comply with RESPA, which required that there was a pre-prediction and a post-petition escrow balance that had to be adjusted. So there was a delay in applying the payment. None of that was dexacious, and none of that was a refusal. All of the payments that were received were applied, and there's a suggestion now on appeal by the defendants that possibly there might have been another payment. But that doesn't really matter because after bankruptcy in the Seventh Circuit, unless the creditor agreed with the debtor to reinstate the mortgage, there would be no reason for the bank to—no duty for the bank to receive any payments. And the idea of keeping the collateral and continuing the payments was not available to the debtor. So it's just a non-issue. A dexacious refusal to accept a payment is a non-issue, and all payments prior to bankruptcy have been recorded. So the idea that there are missing payments out there doesn't make sense. Also, the record is clear that the defendants were compelled to produce all of their canceled checks, and they were compelled to produce all of their evidence of payments. And Terry Sharp just went to extreme lengths to get discovery, and all of that's in the record because there were motions to compel and the depositions were included in the record. So then finally, the defendants raise what I call a deception theory, and they say that because I've said, well, there's no allegation of any deception, so this consumer fraud claim doesn't mean anything anyway. It is not—you can't bring a consumer fraud claim without alleging deception. So they're saying now there was deception, and the deception they claim is that there was a change in the effective date of the note transfer. So back to what we were talking about under RESPA, they're saying that there was a transfer of the note on July 13th of 1999, and again—and that that was the effective date of the transfer. And then on August 9th, there was a notice of transfer that documented August 4th's date of transfer. Well, those are just two RESPA notices. After the first RESPA notice on the date of closing, once you notice on the date of closing, there's no other required notices under the statute. But in this case, they, you know, covered their bases, and after they actually transferred the note, then they notified again. And there's going to be an interesting—one interesting aspect of this is that defendant states that the things that were stated in trial court and on appeal by the plaintiffs indicate an admission that the note was transferred on July 13th, 1999. Well, there's no admission in the appellate briefing that the note was transferred on July 13th, 1999, and that's the premise of all of his—the idea that the note was transferred on July 13th, 1999 is the premise of all his arguments. And I don't remember, and obviously he doesn't remember, what was actually said at the hearing. We both looked at those documents, and he was making this new argument, and I was—you know, I said something and he said something. I do not remember, and he doesn't remember, if there was an admission that the note was transferred on July 13th, 1999. But even if there was, the argument stayed. Because under this, first of all, it doesn't matter when the note was transferred for a consumer product. It doesn't matter if they changed the effective date. And it doesn't matter if—this theory doesn't explain—doesn't allege damages and there is no— the idea that the note was transferred on July 13th does not invalidate the mortgage and it doesn't support a claim under the consumer product. So either way, even if the defendant is correct that what I said in the trial court indicated that I admitted that there was a transfer of the loan on July 13th, 1999, as a matter of law, his theories are inappropriate. So I'll be happy to answer any questions. Thank you, Counsel. Thank you. Back again. That's the first time I've ever had two arguments. What the record here shows, we didn't raise anything in the summary judgment hearing. It's not like we brought in any new evidence or anything. All we did was point out to the court what was in the documents that they submitted to the court. The court has to consider those one way or the other. And what those documents showed was that this note had been signed on July 13th, 1999. That's on page 1112 of the record. That note was then endorsed from SIU Credit Union to PHH. It's not dated, but it's on the bottom left-hand corner. Now, if, and they are correct that under a negotiable instrument of law in this state, transfer is not absolutely complete until you transfer possession. We don't know. But this, they're asking you to grant summary judgment, to tell the court they should have granted summary judgment. If there's an unknown date here that's important, then the court was correct in not granting summary judgment. Then the notice of assignment of that was dated July 13th, 1999. A copy was given to my clients, and it says, You are hereby notified as required of Section 8 of the Real Estate Settlement Procedures Act that the servicing of your mortgage loan, that is the right to collect payments from you, is being signed, sold, or transferred from SIU Credit Union to PHH Mortgage Services Corp. effective July 13th, 1999. Now, they're going to come into court now and say, Well, we told you it was really effective that day, but it really wasn't. We just lied to you, and you should go ahead and give us your house anyway. Because PHH, as required by RESPA, later gave notice, and it's on page 7, I'm sorry, the prior one was on page 740 of the record. Then on page 742 of the record came the notice of PHH. This says, We are pleased to welcome you as a new member of PHH Mortgage Services Corporation. As you may know, the servicing responsibilities of your loan were transferred from SIU Credit Union to PHH Mortgage Services Corporation effective August 9th, 1999. So, SIU saying it's effective on July 13th, PHH saying it's effective on August 9th, is a bit of a problem, because they don't match up. So, possibly there may be a question of important factors that we don't know here, but if that's the case, again, it should not have been a summary judgment. You need to go to trial to find out what the true answer to this is. The reason this is important is because our Supreme Court said, as I pointed out in my Elkin case, it has been often decided that a mortgage cannot exist as an independent security in the hands of one person, while the note which it is given to secure belongs to another. That makes perfectly good sense, because if Jane Doe owns the note, and John Doe owns the mortgage, John Doe can't enforce the mortgage because he doesn't have the underlying debt foreclosed on it. And Jane Doe has no security interest in her note. So, the note becomes an unsecured note the moment you separate those. It becomes an unsecured note, and the mortgage becomes invalid. And the only way to restore it is to get the borrower to execute a new mortgage. Most of the cases you will read on these, on this type of situation, embodies where the lender has done a blank endorsement of the note. In that case, possession is everything. It's like a barren paper. So, if they do a blank endorsement, whoever is in possession of the note owns that note. And this got to be a real issue after the 2008 collapse, because a lot of our banks were using the MERS system, the Mortgage Electronic Registration System, in what they called a mortgage nominee. And there was no legal definition of it, so MERS had the mortgage. And they were passing these notes around like candy, because whoever was in possession of the note owned it. So, if they transferred it to some trust up in New York, they were told about securities, they own the note, but MERS was sitting there ready to transfer the mortgage back to them as a nominee. It wasn't really in MERS' name. It was a real slick trick that they pulled, and it partially caused the collapse of our system. But in this case, this was not a blank endorsement. This was a direct endorsement from SIU Credit Union to PHH. Now, who did they endorse it to? Well, the documents given at the time says PHH Mortgage Services. Now, the affidavit I complained about says that the Richard Corporation, which is this, the plaintiff, was incorporated in 1985. Then it goes on, and this is page 746 of the record, saying ascendant mortgage changed its name to PHH Mortgage Services Corporation on January the 7th, 2005. The problem is PHH Mortgage Services Corporation is the company that was, whose name's on the paperwork back in 1999. So, I don't know if the girl that did the affidavit got them backwards or what, but her affidavit does not match these documents, not even remotely so. So, no, there was no way for me to respond to an affidavit because I'm sitting there scratching my head going, this doesn't make any sense. So, the problem that they had, and then you go into this arrest, you're caught as to the bankruptcy. All they did at the bankruptcy court was Mr. Astiani did not show up for the hearing. It was a hearing based on whether or not they were going to allow the bank to proceed outside of bankruptcy, the lifting of the stay. So, him not showing up, all he did was waive his right to fight the lifting of the stay. But the whole point of lifting the stay is then they still have to proceed to adjudicate the merits at state court. So, there was no rescue to cotton. There was no adjudication of the merits because that's what this case here is about, is trying to adjudicate the merits of the claim. So, the claim to state that the bankruptcy court somehow adjudicated that simply by relinquishing the asset, it makes no sense at all to say that the payments, whether or not additional payments were made, makes no difference. It also makes no sense to me because we've got a question here about whether or not Astiani has any equity in the house. And that's the term they've used is equity over and over. Well, equity is the amount that the property is worth over and above what's owed of it. If there's been payments made on the note, then there's more equity in the house, less of a deficiency. So, certainly any additional payments is going to affect equity, but the problem is Dr. Astiani is not on the note. So, if merit assets were used to pay for this house and she's not on the note and PHH can't sue her, then whatever her half of those merit assets would be would be her equity in this house. So, that's part of what – it's the danger of loaning money to one person by needing a mortgage from somebody else. And quite honestly, somebody asked me, does Don Astiani possibly get a windfall here if he willed it in our favor, or if he's sent it back to the circuit court and he willed it in our favor? Quite probably. It's part of what happens to a bank when they don't dot their I's across the T's. And that's exactly what happened here. This is back in a time when my cat could have borrowed money to buy a house. And they were churning documents left and right, and they weren't paying attention to what they were doing, and they divided their mortgage in their note. They lost it, and then that unsecured note, which is what they created, was extinguished because the only person that signed it was Oliver Astiani because he filed bankruptcy. So, at the end of the day, the note's gone. This was listed in the bankruptcy? Sorry? This note was listed in the bank – this debt? Yes, sir. Yes, sir. So, if that note was an unsecured note and it's in the bankruptcy, it was extinguished, leaving nothing owed on the house, which is why they're not asking for a deficiency. They're just asking for possession of property. But they know they can't collect any money from anybody because Oliver's been discharged and Donna's not on the note. So, that's a real problem for them. But if it turns out that note became unsecured, that note, when that note was extinguished by the bankruptcy court, the bank's rights on this property ended right then and there. So, had they gone after that and challenged that and asked for it to be in bankruptcy to adjudicate it, they might have been okay. But personally, I think that was a major mistake the banks made by not letting them have it in bankruptcy before taking a look at that themselves, before discharging that debt. But they didn't. They chose to come back to state courts by that time. I think they blew their rights by letting the bankruptcy court discharge that note and then raise the question of whether the bankruptcy union was part of this house. Because she wasn't bankrupt. She wasn't a part of the bankruptcy. So, it's a really unusual scenario, I'll grant. And it's very odd. But I think they just messed up their paperwork 18 years ago.  And I think they blew their rights. And now they want the courts to come in and say, well, no matter how much we did wrong or how much we failed to do this, you need to fix this for us. The idea that this court could even consider the counterclaims is beyond me. This is a 307A4 appeal, which is limited to possession of premises in a foreclosure. But our consumer fraud count and our arrest of a claim have absolutely nothing to do with possession of these premises. So, I don't think the court can even consider that part of their argument. The trial court refused to dismiss our counterclaims. And I think the trial court was in their discretion to do that at that time. Those counts need to be tried. But one of the statements that the courts and counsel made was that there were no facts in dispute. And that may be true. But just because there's no facts in dispute doesn't mean the bank automatically gets judgment. No facts in dispute could lead to a summary judgment on the other side. The problem was we didn't have a summary judgment on the file. So, if the facts had been in our favor and would have warranted a summary judgment had we filed one, the mere fact that we didn't file one doesn't mean they get a summary judgment. And that's the problem here. I think had we had one on file at the time, I think the court might could have granted that as a matter of law because the documents seem pretty clear. But it is possible that the question of when this transfer of this note could be a question. You know, it is possible that even though they executed this note on July 13th, they may not give it in possession of PHA until later on. But that's a question of material fact, which would require more findings by the counsel. And if it turns out that is the case, then you may have additional counter-findings to make because it may have made further misrepresentations of the documents given to my clients. Because there are clearly two different effective dates stated by SIU Credit Union and stated by PHA's marketing. And they're about a month apart. And under RESTA, they only have 15 days prior to the transfer. SIU Credit Union would have to give notice 15 days prior to the transfer. And PHA would have to give notice 15 days after the transfer. So, if you go by July 13th, then PHA was late. If you go by August 9th, SIU was outside their time frame. So, they can't have it both ways. That's the problem. So, the only way they could make it work is if, well, the effective date was neither one of those or somewhere in the middle. But because those dates are more than 15 days apart, one of them is going to be considered to have been misrepresenting the facts to the market. So, those are facts that still need to be determined possibly by the trial court. So, we're simply asking you to affirm the trial court's decision denying the summary judgment and denying the motion to dismiss and send us back to let the trial court sort this out. I'm always amazed at banks' foreclosures. Twenty-something years of doing this, I've never seen a bank ask for a trial. They always expect they should win on a summary judgment. Some days, you've just got to go try a case. And I have the experience to be one of them. Thank you. Thank you. Mr. Sanders, before we get started with the rebuttal, please refrain from clicking your pen. That was distracting for me. I know it's a habit. You probably don't even recognize you're doing it. I apologize. No problem. He talked a lot about his RESPA claim during this. And RESPA is one of the counterclaims that there's this jurisdiction question on. And so, I'm wondering whether he's claiming possession under the RESPA count or not. And I really think that that's a real question. He says there are two effective dates that affect the validity of this mortgage and that this raises issues of fact. Well, the document that he refers to is they're both in the appendix. One is at A83 and the other is at A85. And there are two notices given under RESPA.  So, one of these is at A83 is the Notice of Assignment, Sale, or Transfer of Servicing Rights. And it notices that the right to collect payments from you, Mr. Ashtiani, is being assigned, sold, or transferred from SIU Credit Union to PHH Mortgage Services Corporation effective 7-13-99.  So, the note obviously was signed that day. And this document does not say that the note was transferred that day. And he's admitted in his affidavit brief, if I remember correctly, that nobody knows when the date, what the actual date. The documents don't disclose the date of the note transfer. So, this document doesn't say that the note was transferred on July 13, 2099. And then at A85, it's an August 9, 1999 RESPA notice. And under RESPA, if the notice is given at settlement, there's no other notice required. The notice, and that's in my brief. I've set out the statute in my brief. So, this second notice is not necessary. But it says that the effective, that as you may know, the servicing responsibilities of your loan were transferred from SIU Credit Union to PHH Mortgage Services Corporation effective August 9, 1999. So, they've notified them. And this follows the August 4, 1999 actual transfer of the mortgage and the note to PHH. And that's the date that that is attached to the complaint. And it is found at A47. The assignment of the real estate mortgage is, it says that it's dated August 4, 1999. And it indicates that the loan was transferred also on that date. That the loan was assigned at the same time as the mortgage. And I've quoted that in the brief. I don't want to take up my five minutes, you know, reading, trying to figure out what the document is. But his statement of the law in RESPA is incorrect that SIU had to notify 15 days before it was transferred. The parties had to notify at closing. And if they did, they were exempt from further notification. And then if they didn't notify at closing, they had to notify 15 days after transfer. So, both times it was noticed. And the note, the document that he's referring to does not say that the note was transferred on July 13, 1999. But it's not disputed that the note was transferred and the note was endorsed. And this whole theory that under the Elvin case, that the loan is invalid by some sort of banker, it doesn't make sense if you look at the Elvin case in particular. Because Elvin involved a replugging action. And in that case, the notes were not endorsed to the plaintiff prior to trial. And if you read my brief, I talk about what's actually required to have a valid mortgage. And then the assignment of the note and the endorsement of the note and how that all works out. But as long as PHH had owned the note, we're fine. Nothing he said about the validity of the note really disputed the idea that if you own the note, there's a problem with the validity of the mortgage. In PHH, there's no dispute that PHH owned the note when it was transferred to it and it was endorsed to it sometime on or before August 4th. Thank you, counsel. The court will take this matter under advisement and render a decision in due time.